# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

UNITED STATES,                                    Case No. 1:04-cv-730
      Plaintiff

      vs

RICHARD W. STANDRING,                      **REPORT AND**
individually and dba VIP SALES,              **RECOMMENDATION**
      Defendant.                              (Dlott, J.; Hogan, M.J.)


     The United States brings this action against Richard W. Standring, individually and

doing business as VIP Sales, pursuant to 26 U.S.C. §§ 7402 and 7408 seeking to enjoin Mr.

Standring from promoting an abusive tax scheme.  This matter is before the Court on the

United States' motion for preliminary injunction (Doc. 24) and declaration of Revenue

Agent Steven Rowe in support thereof (Doc. 25), defendant's memorandum, declaration,

exhibits, and errata to the memorandum in opposition to the motion for preliminary

injunction (Docs. 28-33), the United States' reply memorandum and declaration of Michael

Pahl (Docs. 34, 35), the United States' Closing Argument (Doc. 42), defendant's Closing

Argument (Doc. 43), and the United States' Rebuttal to defendant's Closing Argument.

(Doc. 44).  This matter is also before the Court on defendant's motion to strike the

declaration of Revenue Agent Steven Rowe (Doc. 27) and errata thereto (Doc. 33), the

United States' memorandum in opposition to the motion to strike (Doc. 36), defendant's

motion to suppress the deposition of Randall A. Skelton and to strike the declaration of

Michael Pahl and purported emails appended to such declaration (Doc. 38), and the United

States' response thereto. (Doc. 39).  A hearing on the  motion for preliminary injunction was

held before the undersigned Magistrate Judge on August 31, 2005, at which defendant was present and represented by counsel.  Before the Court makes its findings of fact, it will address defendant's motions to strike and to suppress.

### Defendant's motion to strike the Rowe Declaration and exhibits thereto is denied in part and granted in part.

Defendant seeks to exclude Rowe's Declaration and exhibits thereto in their entirety. Defendant's motion is denied in part and granted in part.  At the preliminary injunction hearing, the government moved to admit all of the exhibits attached to Revenue Agent Rowe's Declaration and the Pahl Declaration.  Defendant reiterated his objections set forth in his motions and the Court admitted such exhibits for purposes of the hearing without specifically ruling on defendant's particular objections.  With the exception of Exhibits 4, 5, 11, and 25 to the Rowe Declaration, the Court admits the exhibits attached to Revenue Agent Rowe's Declaration and shall briefly set forth it reasons below.

With the exception of Exhibits 4, 5, 11 and 25 to the Rowe Declaration, defendant's objections concerning a lack of foundation for Mr. Rowe's statements and exhibits to the declaration are overruled.  Agent Rowe was present at the preliminary injunction hearing and provided sufficient testimony about his investigation and conversations with defendant to support a foundation for his declaration.  In addition, defendant's objections to the statements in the declaration concerning Agent Morgason's investigation of defendant Standring are  moot since Agent Morgason testified at the preliminary injunction hearing to establish the facts at issue.

The Court overrules defendant's objections to the Court's consideration of the

irsdecoder.com website exhibits.  The Court disagrees with defendant's contention that

because his website irsdecoder.com is defunct any reference to the website by Agent Rowe is

irrelevant.  As explained more fully below in the Court's ruling on the motion for

preliminary injunction, such evidence is relevant to show a violation of the statute and, in

light of the totality of the evidence including the connection of the irsdecoder.com website to

the foiagen.com website, to show a reasonable likelihood of future violations.  *See United*

*States v. Raymond*, 228 F.3d 804, 813 (7th Cir. 2000), *cert. denied*, 533 U.S. 902 (2001).

The Court overrules defendant's objections to documents from third-party websites

based on lack of authenticity.  Exhibit 7, a page from the website foiagen.com, is offered by

the government to show that foiagen.com began offering services similar to those on

Standring's website irsdecoder.com just days after the IRS summoned Standring's customer

information and irsdecoder.com was shut down.  Exhibits 8-10 are pages from the website

sovereignandfree.com which currently sells defendant's products.  Agent Rowe's

Declaration is sufficient to establish the authenticity of Exhibits 7 to 10 because when

viewed in combination with the documents' circumstantial indicia of authenticity (such as

the dates and web addresses that appear thereon), the declaration would support a reasonable

juror in the belief that the documents are what Mr. Rowe says they are.  *See Perfect 10, Inc.*

*v. Cybernet Ventures, Inc.*, 213 F. Supp.2d 1146, 1154 (C.D. Cal. 2002) ("computer printouts

are the only practical method by which the allegations of the complaint can be brought

before the Court and there is generally a reduced evidentiary standard in preliminary

injunction motions"), citing *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000).  The

Court finds such documents are not hearsay to the extent such documents are introduced to

3

show what is on the websites.  *See Perfect 10*, 213 F. Supp.2d at 1155 ("To the extent these images and text are being introduced to show the images and text found on the websites, they are not statements at all–and thus fall outside the ambit of the hearsay rule.").  Moreover, the documents are admissible for non-hearsay purposes such as showing the relationship between defendant's former website and the third-party websites, and that defendant's promotion is widespread and continues as long as such websites are operational and continue to sell defendant's products.

To the extent defendant objects to the exhibits obtained from the irsdecoder.com website, *see* Exhibits 1-3, 6, 12-15, 19, such documents are admissible as an admission against a party opponent under Fed. R. Civ. P. 801(d)(2).  However, to the extent defendant objects to the declarant's interpretation of such documents, the Court agrees (as apparently does the government)[1] that the documents speak for themselves.

The Court also overrules defendant's objections to Rowe's declaration identifying seven customers who purchased defendant's publications, then filed FOIA requests, and then ceased filing returns and paying taxes. (Doc. 25, ¶34; Doc. 27 at 13-14).  The Court disagrees that the declaration is speculative.  When viewed in the context of Mr. Rowe's investigation along with the other evidence and testimony provided at the hearing, a reasonable inference on the issue of causation may be made that defendant is harming his customers and the United States Treasury through his customer's reliance on his schemes. The Court also overrules defendant's objection to the Wilson Graham letters (Doc. 27 at 14) on the basis that such evidence is not being offered for the truth of the matter asserted

---

[1]        See Doc. 36 at 10.

therein, but rather as circumstantial evidence showing a connection between defendant and another person who has been enjoined and is awaiting prosecution for a tax-fraud scheme.

However, the Court sustains defendant's objection to Exhibit 11 to the Rowe Declaration.  Unlike the other exhibits obtained from defendant's irsdecoder.com website, Exhibit 11 contains an "ncheerios" website address that has not been authenticated by the declarant or any other witness showing that it purports to be created or authored by Mr. Standring or anyone under his control.  The government's argument that Exhibit 11 should be admitted as an admission of a party opponent under Fed. R. Evid. 801(d)(2) addresses a potential hearsay objection, not defendant's authenticity objection under Fed. R. Evid. 901. Likewise, Exhibit 4, a "Standring Gram" which purports to summarize defendant's allegedly fraudulent tax scheme, and Exhibit 5, purportedly an example of Standring's promotional materials, have not been authenticated by Mr. Rowe or by any other witness, do not contain any indicia of authorship by Mr. Standring on their face, and must be stricken.  While the government argues Exhibit 5 is one of Standring's documents because the documents states "we here at irsdecoding.com endorse Pastor Standring's procedures and techniques," the government fails to present any evidence that irsdecod*ing*.com (as opposed to irsdecod*er*.com) is or was defendant's website.  Accordingly, Exhibits 4, 5 and 11 to the Rowe Declaration should be stricken.  Finally, Exhibit 23, a summary of 65 FOIA requests made by defendant, is accepted only to the extent it shows that such requests were made by the defendant.  There has been no foundation explaining the codes or other information contained therein or a basis for the declarant's conclusion concerning the defendant's "belief that he is not required to file federal income tax returns." (Doc. 25, ¶31).

5

**Defendant's motions to suppress and strike are granted.**

Defendant's motions to suppress the deposition of Randall A. Skelton and purported emails appended to the declaration of Michael Pahl (Doc. 34, Exhs. 1, 2, 3; Doc. 35) and to strike the attendant portions of Mr. Pahl's declaration are granted. (Doc. 38).  The transcript of the deposition of Randall A. Skelton (Doc. 34, Exh. 1) lacks a certification by the court reporter.  Nor was a signed copy of the court reporter's certificate introduced at the preliminary injunction hearing.  Therefore, defendant's objection is well-taken and the deposition transcript and exhibits attached thereto are hereby stricken.  *See* Fed. R. Civ. P. 30(f)(1).

**Findings of Fact**

Based on the testimony of IRS Revenue Agent David Morgason, IRS Revenue Agent Steven Rowe, and defendant Richard Standring, the evidence presented at the hearing on the motion for preliminary injunction, the Declaration of Agent Rowe and exhibits attached thereto as admitted above, and the papers filed to date in this matter, the Court finds as follows:

1.  Defendant is a self-professed "student of the tax system" who for years has researched and collected documents relating to the Internal Revenue Service and the federal income tax. (Doc. 29, ¶14).

2.  Defendant conducts business through VIP Sales, located at 5904 Vine Street, Cincinnati, Ohio and operates such business as a sole proprietorship.

3.  In the late 1990s, defendant compiled the research materials he had obtained over the

6

years into "educational manuals" for sale to the general public. These manuals, entitled IRS Seminars Levels 1, 2, and 3, contain copies of tax regulations, court cases, laws, form letters, legal briefs, instructions, and other documents "for the purpose of educating people about making FOIA requests. . . ." (Doc. 29, ¶10).

4. Defendant's customers use his "FOIA Generator" to make over 60 FOIA requests to the IRS to obtain, among other documents, their Individual Master File, or IMF. Once defendant's customers obtain their IMF through the FOIA Generator, defendant's customers are instructed to send the IMF to defendant who "decodes" the IMF for a fee.

5. Defendant's products have been offered for sale at websites located at irsdecoder.com, foiagen.com and sovereignandfree.com. Defendant's products are currently offered for sale at the website sovereignandfree.com.

6. In 2001, defendant established an internet website located at irsdecoder.com where he posted "educational materials" and various documents for sale. Defendant states he removed the website in early February 2004 "due to [his] health." (Doc. 29, ¶12).

7. Defendant has also conducted seminars nationwide in several states promoting his FOIA Generator and Individual Master File (IMF) "decoding" service and has charged customers $160.00 to $175.00 to attend the seminars. Defendant states he no longer conducts seminars because of "health reasons." (Doc. 29, ¶11).

8. Defendant charges approximately $300.00 per "IMF" year (tax year) for his IMF decoding service.

9. As part of defendant's "decoding" scheme, defendant falsely tells customers they are only required to pay federal income taxes if they are involved in an excise taxable activity or if

7

they are federal corporate officers.

10.  As part of this scheme, defendant falsely tells customers that they can use the IMF and other documents obtained under the FOIA to prove they are not liable for federal income tax if they are not engaged in an excise taxable activity or are not federal corporate officers. (Doc. 25, Exhs. 26, 27, 28).

11.  As part of this scheme, defendant "decodes" the IMF obtained by his customers through the FOIA Generator and falsely informs his customers that they are not liable for federal income tax because they are not engaged in an excise taxable activity and are not federal corporate officers.

12.  As part of the "decoding" scheme, defendant falsely informs his customers that the IRS has fraudulently converted his customers into businesses subject to an excise tax.  Defendant falsely informs his customers they can rely on his "decoding" to prove they are not legally obligated to file federal income tax returns or pay federal income taxes.

13.  Defendant's seminar tapes and materials which are currently offered for sale at the website sovereignandfree.com falsely advise customers that they will learn how to "destroy any case the IRS brings against you" and "destroy any charge the IRS brings against you." The materials falsely advise customers that the IRS maintains "secret" files against individuals, that these files are filled with errors, and that his FOIA request is the only way for customers to obtain these secret records.  He also claims the IRS falsifies documents and falsely codes taxpayer records to convert individuals into excise taxable entities.  Customers are also advised they will "learn how to use the information you received from your FOIA requests to rebut the false presumptions of the IRS and build your evidence package within

8

the IRS, which will exonerate you by using their documentation every time." Defendant repeatedly states that the IRS has "falsified" the documents of his customers and that they are always going to be a target every year unless they subscribe to his scheme. Defendant falsely claims he has successfully helped 63 people get out of jail through his methods.

14. Defendant also falsely advises his customers that the IRS has no enforcement powers over them, that the United States Congress controls two separate governments, one for the 50 states and one for the territories such as Guam, Puerto Rico, and the Virgin Islands, and that only the residents of U.S. territories are subject to income taxation.

15. Defendant organizes or sells an FOIA Generator and Individual Master File "decoding" service that falsely promises customers across the nation that they can rely on defendant's "decoding" of their IRS Individual Master File to prove they are not legally obligated to file federal income tax returns or pay federal income tax.

16. The IRS has repeatedly informed defendant of his obligation to file federal income tax returns and to pay federal income tax. Defendant has not filed a federal income tax return since 1989 and has been assessed over $70,000.00 in taxes, penalties and interest by the IRS for his failure to pay federal income taxes. Defendant is making substantial income from his decoding scheme for which he has never paid any federal income tax.

17. Defendant has repeatedly been told that his promotion violates the Internal Revenue Code. On July 29, 2003, Agent Morgason met with defendant as part of an investigation into defendant's decoding scheme. Defendant refused to bring the documents requested, including what he was selling and a list of his clients. His responses to questions were evasive. He refused to answer whether he ever filed a tax return for his business, VIP Sales.

While he claimed to be suffering from health problems, Agent Morgason testified that defendant did not visibly appear to be in ill health, nor did he provide documentation from a physician verifying the status of his health, a factor the IRS considers in determining whether to go forward with an investigation.

18.  On September 18, 2003, Agent Morgason mailed a letter to defendant informing him he was under investigation for possible violations of the Internal Revenue Code.  Defendant responded by flooding the IRS with frivolous correspondence.  *See, e.g.*, Doc. 25, Exh. 22.

19.  Defendant also made 65 FOIA requests with the IRS disclosure office between October 22, 2003 and March 2, 2004.

20.  On September 29, 2003, Agent Morgason served defendant with a summons seeking information relative to defendant's potential liability for abusive-tax-promoter penalties under 26 U.S.C. §§ 6700 and 6701 and for injunctive relief against him under 26 U.S.C. §§ 7402 and 7408.

21.  On October 29, 2003, defendant met with Agent Morgason but failed to comply with the summons to bring some 25 items.  Rather, defendant furnished a written declaration stating he had no involvement with any tax avoidance promotion or tax shelter and refused to answer any questions posed to him.  Agent Morgason testified that defendant did not appear ill or visibly sick.  Because defendant refused to provide any information responsive to the summons, the IRS referred a summons-enforcement action to the United States Department of Justice.

22.  On January 21, 2004, Agent Rowe issued a summons to PayPal, a company that enables secure purchases over the internet, to ascertain the identity of defendant's customers and

their tax status.  Notice of the summons was given to defendant.  A few days after the PayPal summons was issued and defendant was notified, the irsdecoder.com website was taken down.  Sometime after the irsdecoder.com website was taken down, Agent Rowe attempted to access it and was forwarded to the foiagen.com website.  Agent Rowe's investigation showed that the foiagen.com website was created on February 4, 2004, some fourteen days after the PayPal summons was issued.  More recent attempts to access the irsdecoder.com website by Agent Rowe yielded an error message that the website could not be found.

23.  The foiagen.com website is similar to the irsdecoder.com website in several respects. Both discuss the need to submit FOIA requests to determine that the IRS maintains inaccurate information on individual taxpayers.  Agent Rowe testified that the documents he obtained from the foiagen.com website, including computer templates for FOIA requests and articles, were similar to those from the irsdecoder.com website.  Agent Rowe's investigation also revealed that the domain registrant for the foiagen.com website was one Thomas Selgas. Agent Rowe testified that Mr. Selgas was contacted by and entered into a contract with one "Henry Black" to register the domain name.  Defendant's former website, irsdecoder.com, directed customers to mail copies of their Individual Master Files for decoding to "Henry Black" at defendant's VIP Sales office at 5904 Vine Street, Cincinnati. (Doc. 25, Exh. 2). Agent Rowe testified that "Henry Black" is listed as the registrant of defendant's irsdecoder.com website.  Agent Rowe also testified he was unable to locate an individual named "Henry Black."

24.  As a direct result of defendant's refusal to provide a customer list or any other information regarding his decoding scheme to the IRS, the government has been unable to

determine the total loss to the United States Treasury.

25.  Although defendant has refused to provide the government with a customer list, Agent Rowe has identified seven of defendant's customers who have purchased materials from defendant, filed a number of FOIA requests, and stopped filing federal income tax returns and paying federal income tax.  Based on the information obtained from the PayPal summons, Agent Rowe estimated that defendant had at least 150 customers from December 19, 2001 to January 27, 2004.  One such customer, who has incurred a tax liability of almost $600,000.00, instructed her CPA not to file her IRS form 1040 because she learned at defendant's seminar she was not obligated to file a federal income tax return.

26.  At the hearing of this matter, defendant admitted he was aware his customers were being criminally prosecuted for relying on his advice.

27.  Defendant has also assisted at least one other tax-fraud scheme promoter, Wilson Graham, who was recently enjoined by this Court. (Doc. 25, Exhs. 24, 25).  *See United States v. Graham*, Case No. 1:03-cv-96 (S.D. Ohio June 23, 2005)(Doc. 100).


**Conclusions of Law**

The United States seeks an injunction pursuant to 26 U.S.C. § 7408 which provides for injunctive relief against any person who engages in conduct subject to penalty under Section 6700 of the Internal Revenue Code.  The Court may enjoin an abusive tax scheme promoter if the Court finds: (1) that the person has engaged in any conduct subject to penalty under section 6700 (relating to penalty for promoting abusive tax shelters, etc.); and (2) that injunctive relief is appropriate to prevent recurrence of such conduct. 26 U.S.C. § 7408(b).

Because Section 7408 specifically provides for an injunction, the Court need not consider the traditional guidelines for equitable relief before an injunction may issue. *See United States v. Szoka*, 260 F.3d 516, 523-24 (6th Cir. 2001); *CSX Transp., Inc. v. Tennessee State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir. 1992). *See also United States v. Raymond*, 228 F.3d 804, 811 (7th Cir. 2000), *cert. denied*, 533 U.S. 902 (2001); *United States v. Estate Preservation Services*, 202 F.3d 1093, 1098 (9th Cir. 2000); *United States v. White*, 769 F.2d 511, 515 (8th Cir. 1985). To obtain an injunction in this matter, the United States must prove by a preponderance of the evidence the following five elements: (1) that defendant organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement; (2) that defendant made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) that defendant knew or had reason to know that the statements were false or fraudulent; (4) that the false or fraudulent statements pertained to a material matter; and (5) that an injunction is necessary to prevent recurrence of this conduct. 26 U.S.C. §§ 6700(a), 7408(b). *See Estate Preservation Services*, 202 F.3d at 1098.

Based upon the foregoing findings of fact, the Court concludes that defendant Richard Standring is engaging in conduct subject to penalty under 26 U.S.C. § 6700 and that injunctive relief is appropriate to prevent recurrence of such conduct.

First, defendant sells the FOIA Generator and IMF decoder service at various websites and promotional seminars and therefore has participated in the sale of an entity, plan or arrangement within the meaning of 26 U.S.C. § 6700(a)(1)(A).

Second, defendant made or caused to be made, false or fraudulent statements

concerning the tax benefits to be derived from his decoding scheme.  While defendant's

declaration states, "At no time have I told anyone that the decoding of the IMF will prove

they are not legally obligated to file returns nor have I told anyone that this material can be

used to stop filing returns" (Doc. 29, ¶24), the preponderance of the evidence shows his tax-

fraud scheme was designed to convince customers they have no legal obligation to file

federal income tax returns or pay federal income taxes:

> Do you really think Congress is going to do anything about the IRS? Are they
> going to admit that the American people have been duped and frauded (sic) of
> their money for years? I doubt it!" . . .  You will learn how to build an
> evidence package against the IRS, using their own documents. Pastor
> Standring teaches you how to acquire those documents from government
> agencies. *Use them to prove to yourself and others that you are not liable for
> an individual income tax if you are not engaged in an excise taxable activity
> or are not a federal corporate officer. (Most people don't fall into either of
> these categories).* . . .  After you become convinced of how the IRS really
> operates and have the proof with your own documents, in your name, you will
> have empowered yourself to take up the fight against one of the more abusive
> agencies in the country. Help others do the same. Help us expose this massive
> 'FRAUD.'

(Doc. 25, Exhs. 16, 17)(emphasis added).  In addition, defendant made false statements on

his website and in his written materials and videotapes, including but not limited to

statements that the IRS has no enforcement authority, that the IRS maintains "secret" files

against individuals, that these files are filled with errors, that the IRS falsifies documents and

falsely codes taxpayer records to convert individuals into excise taxable entities, and that use

of his products will "destroy any case the IRS brings against you."  Moreover, while

defendant denies making false statements concerning the benefit derived from his IMF

decoding service, the Court finds defendant is simply not credible.  For example, in his

declaration submitted to the Court defendant denies ever having "filed a FOIA request for

anyone other than myself." (Doc. 29, ¶5).  However, in promoting his services in the IRS

14

Seminar Level One tape, defendant states "In our office at VIP we do a lot of FOIA requests for a number of people across the country. . . ." (Pl. Exh. 28).  Defendant's false statements are aimed at evading income tax liability and amount to false and fraudulent statements concerning the tax benefit to be derived from his abusive tax scheme.

Third, defendant knew or had reason to know that the statements made in connection with his decoding scheme were false or fraudulent.   As a self proclaimed "student of the law" (Doc. 29, ¶15) who states he has "gotten 63 people out of jail," "been in courtrooms with people," "knows what judges are looking for," and "knows the administrative process" (Pl. Exh. 28), defendant knew or should have known that IMF decoder schemes have been enjoined as tax-fraud schemes in the past.  *See, e.g.*, *United States v. Kahn*, 2003 W.L. 23309466 (M.D. Fla. 2003)(enjoining sale of IMF/BMF decoding package, among others, as "abusive tax schemes").  Likewise, defendant knew or should have known that the premise upon which his decoder scheme is based–that his customers are only required to pay federal income taxes if they are involved in an "excise taxable activity"–has been rejected by the Sixth Circuit and other courts as legally frivolous.  *See Martin v. Commissioner*, 756 F.2d 38, 40 (6th Cir. 1985) (concluding that the "not a taxpayer" and "unlawful excise tax" contentions are meritless and grounds for assessing sanctions); *Coleman v. Commissioner*, 791 F.2d 68, 72 (7th Cir. 1986) (describing the "unlawful excise tax" argument as "objectively frivolous"); *Parker v. Commissioner*, 724 F.2d 469, 472 (5th Cir. 1984) (stating that the "excise tax" argument is frivolous, stale, and long "put to rest").

In his defense, Mr. Standring declares, "For the proposition that the federal income tax is an excise tax, I rely upon the case of *United States v. Gaumer*, 972 F.2d 723, 725 (6th

Cir. 1992), where that court stated '*Brushaber* and the Congressional Record excerpt do

indeed state that for constitutional purposes, the income tax is an excise tax.' . . . I do not

believe that this is a frivolous position because there is legal authority for it." (Doc. 29, ¶14).

Defendant further explains his position:

> As a student of the law, I am aware that in 1909 Congress adopted the
> Corporate Excise Tax.  Thereafter, the 16th Amendment to the U.S.
> Constitution was proposed, but before it was ratified, a bill in Congress was
> proposed to enact an income tax that was clearly classified as an excise tax. . .
> .  While this bill was never adopted by Congress, some months after
> ratification of the 16th Amendment in 1913, Congress adopted an income tax
> that, in my understanding, was virtually no different from that "excise tax"
> bill noted above.  In the case of *Brushaber v. Union Pacific Railroad Co.*, 240
> U.S. 1, 36 S.Ct. 236 (1916), the Supreme Court did in fact declare that, in a
> constitutional sense, the federal income tax was an excise tax.  I have relied
> upon the legal authority noted above for my understanding that the federal
> income tax is indeed an excise tax.  This is why I have stated "excise taxable
> activity".

(Doc. 29, ¶15).

The Sixth Circuit has clearly rejected the position taken by defendant.  In *Sawukaytis*

*v. Commissioner*, 102 Fed. Appx. 29, 33, 2004 WL 1376612 at *3 (6th Cir. 2004), the Court

of Appeals addressed the very argument raised by defendant Standring:

> Sawukaytis nevertheless claims that "this Honorable Court has unequivocally
> affirmed the position of the United States Supreme Court and the position of
> the United States Congress" that the income tax is an excise tax, quoting from
> *United States v. Gaumer*, 972 F.2d 723, 725 (6th Cir. 1992), in which we
> noted that "*Brushaber* and the Congressional Record excerpt do indeed state
> that for constitutional purposes, the income tax is an excise tax."  However,
> *no reasonable reader* of this opinion could construe it as overturning the
> ruling in *Martin* [*v. Commissioner*, 756 F.2d 38 (6th Cir. 1985)].  *Gaumer*
> was a criminal case in which the defendant, who was indicted for willfully
> failing to file federal income tax returns, sought to persuade the jury that he
> did not have the requisite intent because he sincerely believed that he did not
> have to pay income taxes.  As proof, Gaumer wanted to introduce photocopies
> of three court cases, including *Brushaber*, which he said had caused him to
> believe that he did not have to pay taxes.  In quoting *Brushaber*, we *clearly*

16

> *did not hold that the income tax is an excise tax* but merely indicated that
> certain language in the case might lead a jury to find that Gaumer honestly
> believed that he did not have to pay income tax.

102 Fed. Appx. 29, 33, 2004 WL 1376612, **3 (emphasis added). The Sixth Circuit in

*Sawukaytis* went on to find petitioner's appeal "obviously frivolous" and granted a motion

for sanctions. 102 Fed. Appx. 29, *35, 2004 WL 1376612, **5. In the face the Sixth Circuit

case law to the contrary, coupled with defendant's admission at the hearing of this matter

that he was aware his customers were being criminally prosecuted for relying on his advice,

the Court finds that defendant knew or should have known his position on excise taxable

activities was frivolous. *See United States v. Estate Preservation Servs.*, 202 F.3d 1093,

1103 (9th Cir. 2000). *See also National Commodity and Barter Association/National*

*Commodity Exchange v. U.S.*, 843 F. Supp. 655, 664 (D. Colo. 1993), *aff'd*, 42 F.3d 1406

(10th Cir. 1994), *cert. denied*, 516 U.S. 807 (1995) (the plaintiffs knew or had reason to

know their positions were frivolous notwithstanding their adamant belief in their

righteousness because they also knew that courts have uniformly rejected their teachings).

Given defendant's professed knowledge, experience, and familiarity in tax matters and with

federal case law, the Court finds he knew or should have known his statements were false or

fraudulent.

    Fourth, the false or fraudulent statements made by defendant pertained to a material

matter. "If a particular statement has a substantial impact on the decision-making process or

produces a substantial tax benefit to a taxpayer, the matter is properly regarded as 'material'

within the meaning of § 6700." *United States v. Stephenson*, 313 F. Supp.2d 1054, 1060

(W.D. Wash. 2004). *See also United States v. Estate Preservation Services*, 38 F. Supp.2d

846, 855 (E.D. Cal. 1998), *aff'd*, 202 F.3d 1093 (9th Cir. 2000); *Abdo v. U.S. I.R.S.*, 234 F.

Supp.2d 553, 563 (M.D.N.C. 2002), *aff'd*, 63 Fed. Appx. 163 (4th Cir. 2003), *cert. denied*,

540 U.S. 1120 (2004).  The evidence shows that defendant's customers in fact relied on his

false statements in deciding not to file federal tax returns or pay federal income taxes.

Therefore, the Court finds defendant's false statements are material.

Fifth, an injunction is necessary to prevent recurrence of defendant's conduct.  The

Court must examine the totality of the circumstances and consider the following factors in

making this determination: (1) the gravity of harm caused by the offense; (2) the extent of

defendant's participation and his degree of scienter; (3) the isolated or recurrent nature of the

infraction and the likelihood that defendant's customary business activities might again

involve him in such transactions; (4) defendant's recognition of his own culpability; and (5)

the sincerity of defendant's assurances against future violations. *United States v. Raymond*

228 F.3d 804, 813 (7th Cir. 2000), *cert. denied*, 533 U.S. 902 (2001).

These factors weigh in favor of entering an injunction against defendant.

Defendant's FOIA Generator and IMF decoder scheme have and will continue to cause harm

to his customers and to the United States Treasury.  The information obtained by Agent

Rowe shows that defendant has at least 150 customers whose identities have not yet been

discovered despite repeated requests to defendant.  The number of customers also indicates

defendant's scheme is not an isolated occurrence, but rather of a recurrent nature.  There is

also strong circumstantial evidence that defendant has actively engaged in conduct aimed at

continuing his illegal scheme while avoiding detection by the IRS.  The evidence shows

defendant's irsdecoder.com website was shut down just days after he received notice of the

18

PayPal summons and that the foiagen.com began operating fourteen days after the PayPal summons was issued.  Agent Rowe's testimony also showed a connection between "Henry Black" and the two inter-related websites.  Defendant does not dispute these facts, but rather asserts his website was shut down because of ill health, a proposition he fails to support with any credible evidence.  Moreover, defendant has continued to sell his IRS Seminar materials and tapes on the internet website sovereignandfree.com and has failed to acknowledge the illegality of his conduct.  The Court finds defendant will continue his activities until enjoined by this Court.

Finally, the Court rejects defendant's claim that his expression "primarily constitutes political speech" (Doc. 28 at 28) which is protected under the First Amendment.  Defendant contends he "does (and did) not merely put publications out for sale, without concern for and independent pursuit of political arguments," but "seek[s] to mock the Internal Revenue Service and the Government in general with their own documents or with provisions of law." (Doc. 28 at 27).

While commercial speech receives some protection under the First Amendment, commercial speech which is false or fraudulent does not. *Central Hudson Gas & Electric v. Public Serv. Commission*, 477 U.S. 557, 563-64 (1980); *United States v. Schiff*, 379 F.3d 621, 626, 630 (9th Cir. 2004), *cert. denied*, __ S.Ct. __, 2005 WL 2413836, 73 USLW 3632 (U.S. Oct. 03, 2005).  *Central Hudson* describes commercial speech as "advertising pure and simple" or "expression related solely to the economic interests of the speaker and its audience." 447 U.S. at 561-62.  The use of commercial speech to promote illegal conduct is not within the protection of the First Amendment and may be regulated or barred entirely by

19

the government. 447 U.S. at 563-564.  The sale or advertisement of tax advice or other

representations regarding the tax laws is commercial speech and courts have held that the

sale of books or tapes that promote fraudulent tax schemes constitutes commercial speech.

*See United States v. Bell*, 414 F.3d 474, 481 (3d Cir. 2005) (holding that defendant's offers

for sale of commercial tax products, including information packets and seminars on tape,

constituted commercial speech); *Schiff*, 379 F.3d 621, 626-29 (enjoining publication of

defendant's book to the extent that the book constituted advertising by claiming that readers

could lawfully avoid paying income taxes with the help of defendant's commercial tax

products); *United States v. Kaun*, 827 F.2d 1144, 1152 (7th Cir. 1987) (defendant held

himself out as a tax adviser and his advertising and marketing activities in that regard are

commercial speech).

       Defendant attempts to distinguish the cases which have enjoined speech similar to his

by arguing his expression primarily consists of political speech.  Contrary to defendant's

argument, the inclusion of articles, publications and other documents which purportedly

"mock" the Government on his former website or any current website and in his IRS

Seminar materials does not change the essential character of defendant's speech.  As

explained by the Third Circuit in *Bell*:

> In disputing the false commercial speech ruling, Bell argues the website also
> contained "important information concerning history, economic systems, monetary systems,
> judicial systems, politics and opinions."  But even if true, this fact does not undermine the
> well-supported finding that the website's primary function was to sell fraudulent and illegal
> tax advice and services. Bell contends that because his website includes this additional
> information, it is not "pure" commercial speech which merely proposes a commercial
> transaction. . . .  Packaging a commercial message with token political commentary does not
> insulate commercial speech from appropriate restrictions.

414 F.3d at 479-80.

Likewise, defendant's inclusion of articles with political commentary and the like does not transform his website, promotional materials or decoding services into "political" speech.  Rather, the inclusion of such speech into defendant's website and promotional materials actually reinforces the fraudulent commercial message and promotes tax evasion by duping customers into believing they are not legally obligated to file returns or pay taxes. The primary function of the websites and promotional materials remains the selling of fraudulent and illegal tax advice.  Defendant's speech in this regard is not protected by the First Amendment and may be enjoined under § 7408.

Based on the foregoing, the Court concludes that defendant Richard Standring is engaging in conduct subject to penalty under 26 U.S.C. § 6700 and is interfering with the administration of the internal revenue laws.  Accordingly, the Court recommends that defendant be preliminarily enjoined under 26 U.S.C. § 7408.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The government's motion for preliminary injunction (Doc. 24) be **GRANTED**.

2.  The Court enter the following Order in this matter:

A.  Under 26 U.S.C. § 7408, a preliminary injunction is entered prohibiting defendant Standring, individually and doing business as VIP Sales, and his representatives, agents, servants, employees, joint venturers, business partners, and those persons in active concert or participation with him, from directly or indirectly promoting, marketing, or selling the FOIA Generator and IMF decoding service, or similar false and fraudulent schemes and from providing services to Standring's customers.  Defendant is also enjoined under § 7408 from

21

engaging in any conduct that is subject to any penalty under the Internal Revenue Code.

B.  Defendant Standring must contact by mail (and also by email, if an address is known) within 14 days of the entry of this Order all persons who have purchased the FOIA Generator and IMF decoding service and inform them of the Court's findings concerning the falsity of Standring's representations and attach a copy of the preliminary injunction against Standring and his associates and related entities.  Defendant Standring must file a sworn certificate of compliance with this portion of the Order, within 18 days of the date of this Order;

C.  Defendant Standring must contact by mail (and also by email, if an address is known) within 14 days of the entry of this Order all persons who advertise for sale or sell the FOIA Generator and IMF decoding service and inform them of the Court's findings concerning the falsity of Standring's representations and attach a copy of the preliminary injunction against Standring and his associates and related entities.  Defendant Standring must file a sworn certificate of compliance with this portion of the Order, within 18 days of the date of this Order;

D.  Defendant Standring must produce to the United States within 14 days of the entry of this Order any records in his possession, custody, or control, identifying the persons who have purchased the FOIA Generator and IMF decoding service.

E.  Defendant Standring and his representative, agents, servants, employees, joint venturers, business partners, and those persons in active concert or participation with him are enjoined from misrepresenting any of the terms of this Order.

22

Date:  10/19/2005                              s/Timothy S. Hogan
                                               Timothy S. Hogan
                                               United States Magistrate Judge

23

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION


UNITED STATES,                                          Case No. 1:04-cv-730
      Plaintiff

      vs

RICHARD W. STANDRING,
individually and dba VIP SALES,
      Defendant.                              (Dlott, J.; Hogan, M.J.)


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R**


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within TEN (10) DAYS after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within TEN DAYS after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

24