# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

UNITED STATES,                                    Case No. 1:04-cv-730
     Plaintiff

     vs

RICHARD W. STANDRING,                       **REPORT AND**
individually and dba VIP SALES,             **RECOMMENDATION**
     Defendant.                               (Dlott, J.; Hogan, M.J.)

     The United States brings this action against Richard W. Standring, individually and

doing business as VIP Sales, pursuant to 26 U.S.C. §§ 7402 and 7408 seeking to enjoin Mr.

Standring from promoting an abusive tax scheme.  This matter is before the Court on the

United States' motion for summary judgment (Doc. 49) and defendant's memorandum in

opposition thereto. (Doc. 51).  For purposes of completeness, the Court also considers the

briefs and materials previously presented by the parties on the motion for preliminary

injunction.  See Docs. 24, 25, 28-33, 34, 35, 42, 43, 44.

     A motion for summary judgment should be granted if the evidence submitted to the

court demonstrates that there is no genuine issue as to any material fact and that the movant

is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56.  *See also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes

over facts which, under the substantive law governing the issue, might affect the outcome of

the action.  *Celotex*, 477 U.S. at 323.

     A party may move for summary judgment on the basis that the opposing party will

not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law.  In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989).  Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990).  The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.).  "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50.  In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283.  *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to

2

demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478

(citing *Celotex* and *Anderson*).  "Where the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).


**PROCEDURAL BACKGROUND**

On August 31, 2005, the undersigned held a hearing on the United States' motion for

preliminary injunction at which defendant was present and represented by counsel.

Following the hearing, a Report was issued recommending the motion for preliminary

injunction be granted. (Doc. 45).  Defendant filed objections to the Report and

Recommendation. (Doc. 48).  On March 15, 2006, the District Judge adopted the Report and

Recommendation of the Magistrate Judge and preliminarily enjoined defendant from

promoting, marketing, or selling his FOIA Generator and IMF decoding service. (Doc. 51).

The United States now seek summary judgment and conversion of the preliminary injunction

into a permanent injunction.


**FACTS**

The following findings of facts, made by the undersigned Magistrate Judge following

the preliminary injunction hearing and adopted by the District Judge, are based on the

testimony of IRS Revenue Agent David Morgason, IRS Revenue Agent Steven Rowe, and

defendant Richard Standring, the evidence presented at the hearing on the motion for

preliminary injunction, the Declaration of Agent Rowe and exhibits attached thereto as

admitted above, and the papers filed to date in this matter:

1.  Defendant is a self-professed "student of the tax system" who for years has researched and collected documents relating to the Internal Revenue Service and the federal income tax. (Doc. 29, ¶14).

2.  Defendant conducts business through VIP Sales, located at 5904 Vine Street, Cincinnati, Ohio and operates such business as a sole proprietorship.

3.  In the late 1990s, defendant compiled the research materials he had obtained over the years into "educational manuals" for sale to the general public.  These manuals, entitled IRS Seminars Levels 1, 2, and 3, contain copies of tax regulations, court cases, laws, form letters, legal briefs, instructions, and other documents "for the purpose of educating people about making FOIA requests. . . ." (Doc. 29, ¶10).

4.  Defendant's customers use his "FOIA Generator" to make over 60 FOIA requests to the IRS to obtain, among other documents, their Individual Master File, or IMF.  Once defendant's customers obtain their IMF through the FOIA Generator, defendant's customers are instructed to send the IMF to defendant who "decodes" the IMF for a fee.

5.  Defendant's products have been offered for sale at websites located at irsdecoder.com, foiagen.com and sovereignandfree.com.  At the time of the preliminary injunction hearing, defendant's products were offered for sale at the website sovereignandfree.com.

6.  In 2001, defendant established an internet website located at irsdecoder.com where he posted "educational materials" and various documents for sale.  Defendant states he removed the website in early February 2004 "due to [his] health." (Doc. 29, ¶12).

7.  Defendant has also conducted seminars nationwide in several states promoting his FOIA

4

Generator and Individual Master File (IMF) "decoding" service and has charged customers $160.00 to $175.00 to attend the seminars.  Defendant states he no longer conducts seminars because of "health reasons." (Doc. 29, ¶11).

8.  Defendant charges approximately $300.00 per "IMF" year (tax year) for his IMF decoding service.

9.  As part of defendant's "decoding" scheme, defendant falsely tells customers they are only required to pay federal income taxes if they are involved in an excise taxable activity or if they are federal corporate officers.

10.  As part of this scheme, defendant falsely tells customers that they can use the IMF and other documents obtained under the FOIA to prove they are not liable for federal income tax if they are not engaged in an excise taxable activity or are not federal corporate officers. (Doc. 25, Exhs. 26, 27, 28).

11.  As part of this scheme, defendant "decodes" the IMF obtained by his customers through the FOIA Generator and falsely informs his customers that they are not liable for federal income tax because they are not engaged in an excise taxable activity and are not federal corporate officers.

12.  As part of the "decoding" scheme, defendant falsely informs his customers that the IRS has fraudulently converted his customers into businesses subject to an excise tax.  Defendant falsely informs his customers they can rely on his "decoding" to prove they are not legally obligated to file federal income tax returns or pay federal income taxes.

13.  Defendant's seminar tapes and materials falsely advise customers that they will learn how to "destroy any case the IRS brings against you" and "destroy any charge the IRS brings

against you."  The materials falsely advise customers that the IRS maintains "secret" files

against individuals, that these files are filled with errors, and that his FOIA request is the

only way for customers to obtain these secret records.  He also claims the IRS falsifies

documents and falsely codes taxpayer records to convert individuals into excise taxable

entities.  Customers are also advised they will "learn how to use the information you

received from your FOIA requests to rebut the false presumptions of the IRS and build your

evidence package within the IRS, which will exonerate you by using their documentation

every time."  Defendant repeatedly states that the IRS has "falsified" the documents of his

customers and that they are always going to be a target every year unless they subscribe to

his scheme.  Defendant falsely claims he has successfully helped 63 people get out of jail

through his methods.

14.  Defendant also falsely advises his customers that the IRS has no enforcement powers

over them, that the United States Congress controls two separate governments, one for the 50

states and one for the territories such as Guam, Puerto Rico, and the Virgin Islands, and that

only the residents of U.S. territories are subject to income taxation.

15.  Defendant organizes or sells an FOIA Generator and Individual Master File "decoding"

service that falsely promises customers across the nation that they can rely on defendant's

"decoding" of their IRS Individual Master File to prove they are not legally obligated to file

federal income tax returns or pay federal income tax.

16.  The IRS has repeatedly informed defendant of his obligation to file federal income tax

returns and to pay federal income tax.  Defendant has not filed a federal income tax return

since 1989 and has been assessed over $70,000.00 in taxes, penalties and interest by the IRS

for his failure to pay federal income taxes.  Defendant is making substantial income from his decoding scheme for which he has never paid any federal income tax.

17.  Defendant has repeatedly been told that his promotion violates the Internal Revenue Code.  On July 29, 2003, Agent Morgason met with defendant as part of an investigation into defendant's decoding scheme.  Defendant refused to bring the documents requested, including what he was selling and a list of his clients.  His responses to questions were evasive.  He refused to answer whether he ever filed a tax return for his business, VIP Sales. While he claimed to be suffering from health problems, Agent Morgason testified that defendant did not visibly appear to be in ill health, nor did he provide documentation from a physician verifying the status of his health, a factor the IRS considers in determining whether to go forward with an investigation.

18.  On September 18, 2003, Agent Morgason mailed a letter to defendant informing him he was under investigation for possible violations of the Internal Revenue Code.  Defendant responded by flooding the IRS with frivolous correspondence.  *See, e.g.*, Doc. 25, Exh. 22.

19.  Defendant also made 65 FOIA requests with the IRS disclosure office between October 22, 2003 and March 2, 2004.

20.  On September 29, 2003, Agent Morgason served defendant with a summons seeking information relative to defendant's potential liability for abusive-tax-promoter penalties under 26 U.S.C. §§ 6700 and 6701 and for injunctive relief against him under 26 U.S.C. §§ 7402 and 7408.

21.  On October 29, 2003, defendant met with Agent Morgason but failed to comply with the summons to bring some 25 items.  Rather, defendant furnished a written declaration stating

7

he had no involvement with any tax avoidance promotion or tax shelter and refused to answer any questions posed to him.  Agent Morgason testified that defendant did not appear ill or visibly sick.  Because defendant refused to provide any information responsive to the summons, the IRS referred a summons-enforcement action to the United States Department of Justice.

22.  On January 21, 2004, Agent Rowe issued a summons to PayPal, a company that enables secure purchases over the internet, to ascertain the identity of defendant's customers and their tax status.  Notice of the summons was given to defendant.  A few days after the PayPal summons was issued and defendant was notified, the irsdecoder.com website was taken down.  Sometime after the irsdecoder.com website was taken down, Agent Rowe attempted to access it and was forwarded to the foiagen.com website.  Agent Rowe's investigation showed that the foiagen.com website was created on February 4, 2004, some fourteen days after the PayPal summons was issued.  More recent attempts to access the irsdecoder.com website by Agent Rowe yielded an error message that the website could not be found.

23.  The foiagen.com website is similar to the irsdecoder.com website in several respects.  Both discuss the need to submit FOIA requests to determine that the IRS maintains inaccurate information on individual taxpayers.  Agent Rowe testified that the documents he obtained from the foiagen.com website, including computer templates for FOIA requests and articles, were similar to those from the irsdecoder.com website.  Agent Rowe's investigation also revealed that the domain registrant for the foiagen.com website was one Thomas Selgas.  Agent Rowe testified that Mr. Selgas was contacted by and entered into a contract with one "Henry Black" to register the domain name.  Defendant's former website, irsdecoder.com,

8

directed customers to mail copies of their Individual Master Files for decoding to "Henry Black" at defendant's VIP Sales office at 5904 Vine Street, Cincinnati. (Doc. 25, Exh. 2). Agent Rowe testified that "Henry Black" is listed as the registrant of defendant's irsdecoder.com website.  Agent Rowe also testified he was unable to locate an individual named "Henry Black."

24.  As a direct result of defendant's refusal to provide a customer list or any other information regarding his decoding scheme to the IRS, the government has been unable to determine the total loss to the United States Treasury.

25.  Although defendant has refused to provide the government with a customer list, Agent Rowe has identified seven of defendant's customers who have purchased materials from defendant, filed a number of FOIA requests, and stopped filing federal income tax returns and paying federal income tax.  Based on the information obtained from the PayPal summons, Agent Rowe estimated that defendant had at least 150 customers from December 19, 2001 to January 27, 2004.  One such customer, who has incurred a tax liability of almost $600,000.00, instructed her CPA not to file her IRS form 1040 because she learned at defendant's seminar she was not obligated to file a federal income tax return.

26.  At the hearing of this matter, defendant admitted he was aware his customers were being criminally prosecuted for relying on his advice.

27.  Defendant has also assisted at least one other tax-fraud scheme promoter, Wilson Graham, who was recently enjoined by this Court. (Doc. 25, Exhs. 24, 25).  *See United States v. Graham*, Case No. 1:03-cv-96 (S.D. Ohio June 23, 2005)(Doc. 100).

Attached to the United States' motion for summary judgment is the court reporter's certification for the deposition of Randall Skelton. (Doc. 50, Exh. 1).  The Court previously granted defendant's motion to suppress the deposition of Randall A. Skelton and purported emails appended to the declaration of Michael Pahl (Doc. 34, Exhs. 1, 2, 3; Doc. 35) because the deposition transcript lacked a certification by the court reporter.  *See* Fed. R. Civ. P. 30(f)(1). (Doc. 45 at 6).  Since a signed copy of the court reporter's certificate has now been submitted and has not been objected to by defendant, the Court makes additional findings of fact based on the deposition transcript:

28.  Defendant Standring, through VIP Sales, continued his customary business activities as late as April 2004 by providing Randall Skelton, an individual convicted of tax evasion[1], with motions to file in his criminal case. (Doc. 34, Pahl Decl. Exh. 1 at 18, 20).

29.  Defendant Standring completed FOIA requests for Skelton, who would then mail them to governmental agencies. (Doc. 34, Pahl Decl. Exh. 1 at 16-17).

30.  Defendant Standring, through VIP Sales, continued to send e-mails to Skelton as late as February 18, 2005.  This email instructed Skelton and other VIP Sales' customers how to organize their FOIA requests, including putting FOIA requests in one binder, letters, notices and rebuttals in another binder, and the IMF in a separate binder. (Doc. 34, Pahl Decl. Exh. 1 at 25-30).

30.  Defendant Standring's statements that he has never "filed a FOIA request for anyone other than myself" (Doc. 29, ¶5) and that he ceased providing FOIA-related activities in April of 2003 "due to health reasons" are not credible.

---

[1]     *See United States v. Randall Skelton*, Case No. 8:04-cr-179 (M.D. Fla. April 29, 2005)(Doc. 60).

**CONCLUSIONS OF LAW**

In moving for summary judgment, the United States relies on all of the evidence submitted at the preliminary injunction hearing which formed the basis for the findings of fact noted above and the additional facts provided through the deposition of Randall Skelton showing that Standring's tax fraud scheme is ongoing.  Standring, in opposition to the motion for summary judgment, raises two primary issues.  First, he claims that he subjectively believes what he espouses about the tax laws and thus lacks the "reason to know" scienter requirement under 26 U.S.C. § 6700(a)(2)(A) for the issuance of a permanent injunction.  Second, Standring claims that the inclusion of political content in his tax materials is an expression of political speech that under the First Amendment should not be enjoined.  In support of these two claims, defendant Standring relies on his objections to the Report recommending the issuance of a preliminary injunction and arguments that have already been considered and rejected by the Court. (Doc. 50 at 2-6).  Defendant fails to present any additional evidence showing material facts are in dispute in this matter, or that as a matter of law summary judgment should not be granted against him.  Accordingly, there are no triable issues of fact involved in this matter.  *See United States v. McGuire*, 714 F.2d 607, 613 (6th Cir. 1983).  Therefore, for the reasons that follow, the undersigned recommends that the preliminary injunction in this matter be converted to a permanent injunction.

Title 26 U.S.C. § 7408 provides for injunctive relief against any person who engages in conduct subject to penalty under Section 6700 of the Internal Revenue Code.  The Court may enjoin an abusive tax scheme promoter if the Court finds: (1) that the person has

engaged in any conduct subject to penalty under section 6700 (relating to penalty for promoting abusive tax shelters, etc.); and (2) that  injunctive relief is appropriate to prevent recurrence of such conduct. 26 U.S.C. § 7408(b).  Because Section 7408 specifically provides for an injunction, the Court need not consider the traditional guidelines for equitable relief before an injunction may issue.  *See United States v. Gleason,* 432 F.3d 678, 682 (6th Cir. 2005).  To obtain an injunction in this matter, the United States must prove by a preponderance of the evidence the following five elements: (1) that defendant organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement; (2) that defendant made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) that defendant knew or had reason to know that the statements were false or fraudulent; (4) that the false or fraudulent statements pertained to a material matter; and (5) that an injunction is necessary to prevent recurrence of this conduct. 26 U.S.C. §§ 6700(a), 7408(b).  *See Gleason,* 432 F.3d 682-83. *See also United States v. Estate Preservation Services*, 202 F.3d 1093, 1098 (9th Cir. 2000).

Based upon the foregoing findings of fact, the Court concludes that defendant Richard Standring is engaging in conduct subject to penalty under 26 U.S.C. § 6700  and that  injunctive relief is appropriate to prevent recurrence of such conduct.

First, defendant sells or has sold the FOIA Generator and IMF decoder service at various websites and promotional seminars and therefore has participated in the sale of an entity, plan or arrangement within the meaning of 26 U.S.C. § 6700(a)(1)(A).

Second, defendant made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from his decoding scheme.  While defendant's

12

declaration states, "At no time have I told anyone that the decoding of the IMF will prove they are not legally obligated to file returns nor have I told anyone that this material can be used to stop filing returns" (Doc. 29, ¶24), the preponderance of the evidence shows his tax-fraud scheme was designed to convince customers they have no legal obligation to file federal income tax returns or pay federal income taxes:

> Do you really think Congress is going to do anything about the IRS? Are they going to admit that the American people have been duped and frauded (sic) of their money for years? I doubt it!" . . . You will learn how to build an evidence package against the IRS, using their own documents. Pastor Standring teaches you how to acquire those documents from government agencies. *Use them to prove to yourself and others that you are not liable for an individual income tax if you are not engaged in an excise taxable activity or are not a federal corporate officer. (Most people don't fall into either of these categories).* . . . After you become convinced of how the IRS really operates and have the proof with your own documents, in your name, you will have empowered yourself to take up the fight against one of the more abusive agencies in the country. Help others do the same. Help us expose this massive 'FRAUD.'

(Doc. 25, Exhs. 16, 17)(emphasis added). In addition, defendant made false statements on his website and in his written materials and videotapes, including but not limited to statements that the IRS has no enforcement authority, that the IRS maintains "secret" files against individuals, that these files are filled with errors, that the IRS falsifies documents and falsely codes taxpayer records to convert individuals into excise taxable entities, and that use of his products will "destroy any case the IRS brings against you." Moreover, while defendant denies making false statements concerning the benefit derived from his IMF decoding service, the Court finds defendant is simply not credible. For example, in his declaration submitted to the Court defendant denies ever having "filed a FOIA request for anyone other than myself." (Doc. 29, ¶5). However, in promoting his services in the IRS Seminar Level One tape, defendant states "In our office at VIP we do a lot of FOIA requests

13

for a number of people across the country. . . ." (Pl. Exh. 28). The deposition testimony of Randall Skelton likewise indicates that defendant prepared FOIA requests on behalf of Skelton. Defendant's false statements are aimed at evading income tax liability and amount to false and fraudulent statements concerning the tax benefit to be derived from his abusive tax scheme.

Third, defendant knew or had reason to know that the statements made in connection with his decoding scheme were false or fraudulent. The Court considers several factors in making this determination: "(1) the extent of the defendant's reliance upon knowledgeable professionals; (2) the defendant's level of sophistication and education; and (3) the defendant's familiarity with tax matters." *Gleason*, 432 F.3d at 683, quoting *Estate Preservation Servs.*, 202 F.3d at 1103. Defendant Standring has not asserted reliance on knowledgeable professionals, but proclaims himself a "student of the law" who has researched, collected, and compiled information on the tax system for over twenty years. (Doc. 29, ¶¶3-4, 9-10, 12, ¶15). His promotional and "educational" materials state he has "gotten 63 people out of jail," "been in courtrooms with people," "knows what judges are looking for," and "knows the administrative process." (Pl. Exh. 28). In view of this knowledge, experience, and familiarity with tax matters, defendant knew or should have known that IMF decoder schemes like his have been enjoined as tax-fraud schemes in the past. *See, e.g.*, *United States v. Kahn*, 2003 W.L. 23309466 (M.D. Fla. 2003)(enjoining sale of IMF/BMF decoding package, among others, as "abusive tax schemes"). Likewise, defendant knew or should have known that the premise upon which his decoder scheme is based–that his customers are only required to pay federal income taxes if they are involved

14

in an "excise taxable activity"–has been rejected by the Sixth Circuit and other courts as

legally frivolous.  *See Martin v. Commissioner*, 756 F.2d 38, 40 (6th Cir. 1985) (concluding

that the "not a taxpayer" and "unlawful excise tax" contentions are meritless and grounds for

assessing sanctions); *Coleman v. Commissioner*, 791 F.2d 68, 72 (7th Cir. 1986) (describing

the "unlawful excise tax" argument as "objectively frivolous"); *Parker v. Commissioner*, 724

F.2d 469, 472 (5th Cir. 1984) (stating that the "excise tax" argument is frivolous, stale, and

long "put to rest").

In his defense, Mr. Standring declares, "For the proposition that the federal income

tax is an excise tax, I rely upon the case of *United States v. Gaumer*, 972 F.2d 723, 725 (6th

Cir. 1992), where that court stated '*Brushaber* and the Congressional Record excerpt do

indeed state that for constitutional purposes, the income tax is an excise tax.' . . .  I do not

believe that this is a frivolous position because there is legal authority for it." (Doc. 29, ¶14).

Defendant further explains his position:

> As a student of the law, I am aware that in 1909 Congress adopted the
> Corporate Excise Tax.  Thereafter, the 16th Amendment to the U.S.
> Constitution was proposed, but before it was ratified, a bill in Congress was
> proposed to enact an income tax that was clearly classified as an excise tax. . .
> .  While this bill was never adopted by Congress, some months after
> ratification of the 16th Amendment in 1913, Congress adopted an income tax
> that, in my understanding, was virtually no different from that "excise tax"
> bill noted above.  In the case of *Brushaber v. Union Pacific Railroad Co.*, 240
> U.S. 1, 36 S.Ct. 236 (1916), the Supreme Court did in fact declare that, in a
> constitutional sense, the federal income tax was an excise tax.  I have relied
> upon the legal authority noted above for my understanding that the federal
> income tax is indeed an excise tax.  This is why I have stated "excise taxable
> activity".

(Doc. 29, ¶15).

The Sixth Circuit has clearly rejected the position taken by defendant.  In *Sawukaytis*

15

*v. Commissioner*, 102 Fed. Appx. 29, 33, 2004 WL 1376612 at *3 (6th Cir. 2004), the Court

of Appeals addressed the very argument raised by defendant Standring:

> Sawukaytis nevertheless claims that "this Honorable Court has unequivocally
> affirmed the position of the United States Supreme Court and the position of
> the United States Congress" that the income tax is an excise tax, quoting from
> *United States v. Gaumer*, 972 F.2d 723, 725 (6th Cir. 1992), in which we
> noted that "*Brushaber* and the Congressional Record excerpt do indeed state
> that for constitutional purposes, the income tax is an excise tax." However,
> *no reasonable reader* of this opinion could construe it as overturning the
> ruling in *Martin* [*v. Commissioner*, 756 F.2d 38 (6th Cir. 1985)]. *Gaumer*
> was a criminal case in which the defendant, who was indicted for willfully
> failing to file federal income tax returns, sought to persuade the jury that he
> did not have the requisite intent because he sincerely believed that he did not
> have to pay income taxes. As proof, Gaumer wanted to introduce photocopies
> of three court cases, including *Brushaber*, which he said had caused him to
> believe that he did not have to pay taxes. In quoting *Brushaber*, we *clearly
> did not hold that the income tax is an excise tax* but merely indicated that
> certain language in the case might lead a jury to find that Gaumer honestly
> believed that he did not have to pay income tax.

102 Fed. Appx. 29, 33, 2004 WL 1376612, **3 (emphasis added). The Sixth Circuit in

*Sawukaytis* went on to find petitioner's appeal "obviously frivolous" and granted a motion

for sanctions. 102 Fed. Appx. 29, *35, 2004 WL 1376612, **5. In the face the Sixth Circuit

case law to the contrary, coupled with defendant's admission at the hearing of this matter

that he was aware his customers were being criminally prosecuted for relying on his advice,

the Court finds that defendant knew or should have known his position on excise taxable

activities was frivolous. *See Gleason,* 432 F.3d at 683; *Estate Preservation Servs.*, 202 F.3d

at 1103. *See also National Commodity and Barter Association/National Commodity

Exchange v. U.S.*, 843 F. Supp. 655, 664 (D. Colo. 1993), *aff'd*, 42 F.3d 1406 (10th Cir.

1994), *cert. denied*, 516 U.S. 807 (1995) (the plaintiffs knew or had reason to know their

positions were frivolous notwithstanding their adamant belief in their righteousness because

16

they also knew that courts have uniformly rejected their teachings).  Given defendant's

professed knowledge, experience, and familiarity in tax matters and with federal case law,

the Court finds he knew or should have known his statements were false or fraudulent.

Fourth, the false or fraudulent statements made by defendant pertained to a material

matter.  "Statements with a 'substantial impact' on the decision to purchase a tax package

pertain to a material matter." *Gleason*, 432 F.3d at 683.  In addition, "[i]f a particular

statement has a substantial impact on the decision-making process or produces a substantial

tax benefit to a taxpayer, the matter is properly regarded as 'material' within the meaning of

§ 6700." *United States v. Stephenson*, 313 F. Supp.2d 1054, 1060 (W.D. Wash. 2004).  *See*

*also United States v. Estate Preservation Services*, 38 F. Supp.2d 846, 855 (E.D. Cal. 1998),

*aff'd*, 202 F.3d 1093 (9th Cir. 2000); *Abdo v. U.S. I.R.S.*, 234 F. Supp.2d 553, 563 (M.D.N.C.

2002), *aff'd*, 63 Fed. Appx. 163 (4th Cir. 2003), *cert. denied*, 540 U.S. 1120 (2004).  The

evidence shows that defendant's customers in fact relied on his false statements in deciding

not to file federal tax returns or pay federal income taxes.  Therefore, the Court finds

defendant's false statements are material.

Fifth, an injunction is necessary to prevent recurrence of defendant's conduct.  The

Court must examine the totality of the circumstances and consider the following factors in

making this determination:

> 1) the gravity of the harm caused by the offense; (2) the extent of the
> defendant's participation; (3) the defendant's degree of scienter; (4) the
> isolated or recurrent nature of the infraction; (5) the defendant's recognition
> (or non-recognition) of his own culpability; and (6) the likelihood that
> defendant's occupation would place him in a position where future violations
> could be anticipated.

*Gleason*, 432 F.3d at 683, quoting *Estate Preservation Servs.*, 202 F.3d at 1105.  *See also*
*United States v. Raymond* 228 F.3d 804, 813 (7th Cir. 2000), *cert. denied*, 533 U.S. 902
(2001).

  These factors weigh in favor of entering an injunction against defendant.  Defendant's
FOIA Generator and IMF decoder scheme have and will continue to cause harm to his
customers and to the United States Treasury.  The information obtained by Agent Rowe
shows that defendant has at least 150 customers whose identities have not yet been
discovered despite repeated requests to defendant.  The number of customers also indicates
defendant's scheme is not an isolated occurrence, but rather of a recurrent nature.  There is
also strong circumstantial evidence that defendant has actively engaged in conduct aimed at
continuing his illegal scheme while avoiding detection by the IRS.  The evidence shows
defendant's irsdecoder.com website was shut down just days after he received notice of the
PayPal summons and that the foiagen.com began operating fourteen days after the PayPal
summons was issued.  Agent Rowe's testimony also showed a connection between "Henry
Black" and the two inter-related websites.  Defendant does not dispute these facts, but rather
asserts his website was shut down because of ill health, a proposition he fails to support with
any credible evidence.  In addition, the deposition testimony of Randall Skelton indicates
defendant's claim that ill health prevents him from further engaging in illegal conduct is
unfounded and that his tax fraud scheme is ongoing.  Moreover, defendant has failed to
acknowledge the illegality of his conduct.  The Court finds defendant will continue his
activities until enjoined by this Court.

Finally, the Court rejects defendant's claim that his expression "primarily constitutes political speech" (Doc. 28 at 28) which is protected under the First Amendment.  Defendant contends he "does (and did) not merely put publications out for sale, without concern for and independent pursuit of political arguments," but "seek[s] to mock the Internal Revenue Service and the Government in general with their own documents or with provisions of law." (Doc. 28 at 27).

While commercial speech receives some protection under the First Amendment, commercial speech which is false or fraudulent does not. *Central Hudson Gas & Electric v. Public Serv. Commission*, 477 U.S. 557, 563-64 (1980); *United States v. Schiff*, 379 F.3d 621, 626, 630 (9th Cir. 2004), *cert. denied*, 126 S.Ct. 334 (2005).  *Central Hudson* describes commercial speech as "advertising pure and simple" or "expression related solely to the economic interests of the speaker and its audience." 447 U.S. at 561-62.  The use of commercial speech to promote illegal conduct is not within the protection of the First Amendment and may be regulated or barred entirely by the government. 447 U.S. at 563-564.  The sale or advertisement of tax advice or other representations regarding the tax laws is commercial speech and courts have held that the sale of books or tapes that promote fraudulent tax schemes constitutes commercial speech.  *See United States v. Bell*, 414 F.3d 474, 481 (3d Cir. 2005) (holding that defendant's offers for sale of commercial tax products, including information packets and seminars on tape, constituted commercial speech); *Schiff*, 379 F.3d 621, 626-29 (enjoining publication of defendant's book to the extent that the book constituted advertising by claiming that readers could lawfully avoid paying income taxes with the help of defendant's commercial tax products); *United States v. Kaun*, 827 F.2d

19

1144, 1152 (7th Cir. 1987) (defendant held himself out as a tax adviser and his advertising and marketing activities in that regard are commercial speech).

Defendant attempts to distinguish the cases which have enjoined speech similar to his by arguing his expression primarily consists of political speech.  Contrary to defendant's argument, the inclusion of articles, publications and other documents which purportedly "mock" the Government on his former website or any current website and in his IRS Seminar materials does not change the essential character of defendant's speech.  As explained by the Third Circuit in *Bell*:

> In disputing the false commercial speech ruling, Bell argues the website also contained "important information concerning history, economic systems, monetary systems, judicial systems, politics and opinions."  But even if true, this fact does not undermine the well-supported finding that the website's primary function was to sell fraudulent and illegal tax advice and services. Bell contends that because his website includes this additional information, it is not "pure" commercial speech which merely proposes a commercial transaction. . . .  Packaging a commercial message with token political commentary does not insulate commercial speech from appropriate restrictions.

414 F.3d at 479-80.

Likewise, defendant's inclusion of articles with political commentary and the like does not transform his website, promotional materials or decoding services into "political" speech.  Rather, the inclusion of such speech into defendant's website and promotional materials actually reinforces the fraudulent commercial message and promotes tax evasion by duping customers into believing they are not legally obligated to file returns or pay taxes. The primary function of the websites and promotional materials remains the selling of fraudulent and illegal tax advice.  Defendant's speech in this regard is not protected by the First Amendment and may be enjoined under § 7408.

Based on the foregoing, the Court concludes that defendant Richard Standring is

20

engaging in conduct subject to penalty under 26 U.S.C. § 6700 and is interfering with the administration of the internal revenue laws.  Accordingly, the Court recommends that defendant be permanently enjoined under 26 U.S.C. § 7408.

The Court also recommends that the United States be awarded costs in this action. Pursuant to Fed. R. Civ. P. 54(d)(1), "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees *shall* be allowed as of course to the prevailing party unless the court otherwise directs." (Emphasis added).  The United States may, absent statutory restriction, recover costs to the same extent as a private party. *Pine River Logging & Improvement Co. v. United States*, 186 U.S. 279 (1902); Wright & Miller, 10 Fed. Prac. & Proc. Civ.3d § 2672 (2005).  *See also United States v. Mitchell*, 580 F.2d 789, 793 (5th Cir. 1978).  Defendant Standring has cited no statutory or case law authority which precludes taxation of costs in favor of the United States in a case such as this.  The statutes cited by defendant Standring, which provide for a waiver of sovereign immunity and permit the imposition of fees and costs *against* the United States, are inapplicable where the United States seeks an award of costs in its favor.  Thus, the United States is the prevailing party in this matter and should be awarded it costs.

### IT IS THEREFORE RECOMMENDED THAT:

1.  The United States' motion for summary judgment (Doc. 49) be **GRANTED**.

2.  The Court enter the following Order in this matter:

A.  This Court, pursuant to Internal Revenue Code §§ 7402 and 7408, enters a permanent injunction prohibiting defendant Standring, individually and doing business

through any other entity, and his representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with him, from directly or indirectly:

    1.  Organizing, promoting, marketing, or selling the FOIA Generator and IMF decoding service, or any similar false and fraudulent schemes, tax shelters, plans, or arrangements that advise or assist customers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities;

    2.  Making false or fraudulent statements about the securing of any tax benefit by reason of participating in any plan or arrangement;

    3.  Aiding or abetting other to violate the tax laws;

    4.  Engaging in conduct subject to penalty under Internal Revenue Code § 6700, i.e., by making or furnishing, in connection with the organization or sale of a shelter, plan, or arrangement, a statement the defendant knows or has reason to know to be false or fraudulent as to any material matter under the federal tax laws; and

    5.  Engaging in any conduct subject to penalty under any other section of the Internal Revenue Code.

    B.  Defendant Standring must contact by mail (and also by email, if an address is known) within 14 days of the entry of this Order all persons who have purchased the FOIA Generator and IMF decoding service and inform them of the Court's findings concerning the falsity of Standring's representations and attach a copy of the permanent injunction against Standring and his associates and related entities.  Defendant Standring must file a sworn certificate of compliance with this portion of the Order, within 18 days of the date of this Order;

C.  Defendant Standring must contact by mail (and also by email, if an address is known) within 14 days of the entry of this Order all persons who advertise for sale or sell the FOIA Generator and IMF decoding service and inform them of the Court's findings concerning the falsity of Standring's representations and attach a copy of the permanent injunction against Standring and his associates and related entities.  Defendant Standring must file a sworn certificate of compliance with this portion of the Order, within 18 days of the date of this Order;

D.  Defendant Standring must produce to the United States within 14 days of the entry of this Order a list identifying the persons who have purchased the FOIA Generator and IMF decoding service.  The list shall include each customer's full name, address, e-mail address, telephone number, and Social Security number.

E.  Defendant Standring and his representatives, agents, servants, employees, joint venturers, business partners, and those persons in active concert or participation with him are enjoined from misrepresenting any of the terms of this Order.

F.  The United States is awarded costs.

Date:  3/27/2006              s/Timothy S. Hogan
                              Timothy S. Hogan
                              United States Magistrate Judge

# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
### WESTERN  DIVISION

UNITED STATES,                                          Case No. 1:04-cv-730
      Plaintiff

    vs

RICHARD W. STANDRING,
individually and dba VIP SALES,
      Defendant.                                        (Dlott, J.; Hogan, M.J.)


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R**


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within TEN (10) DAYS after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within TEN DAYS after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).